# IN THE COURT OF APPEALS OF TENNESSEE

## AT NASHVILLE

| | | |
|---|---|---|
| AMANDA LINN CASHION, | ) | TENNESSEE CLAIMS COMMISSION |
| | ) | (Middle Division Claim 99000601) |
| Claimant/Appellant | ) | |
| | ) | |
| v. | ) | APPEAL NO. 01A01-9903-BC-00174 |
| | ) | |
| STATE OF TENNESSEE | ) | |
| | ) | |
| Defendant/Appellee | ) | AFFIRMED |

**FILED**

September 17, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

Amanda Linn Cashion, Memphis, *pro se* for Appellant.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Martha A. Tarleton, Senior Counsel, Nashville, for Appellee.

## O P I N I O N

INMAN, Senior Judge

This claim against the State for damages for alleged libel was filed with the Division of Claims Administration on October 7, 1998, and subsequently transferred to the Claims Commission, whose decision was upheld by the Chancery Court. The claimant, a former probationary staff attorney for the Department of Mental Health and Mental Retardation, alleges that she was libeled by an opinion of the Court of Appeals styled *Cashion v. Robertson*, and reported in 955 S.W.2d 60 (Tenn. Ct. App. 1997), which reviewed and affirmed the judgment of the Chancery Court.

The State of Tennessee is alleged to have acted by and through the (1) Court of Appeals, (Middle Section), as an entity, (2) Judges Koch, Todd, and Cantrell, (3) the members of the Supreme Court of Tennessee, and (4) John Knox Walkup, the Attorney General of Tennessee. The Supreme Court is taken to task on account

of its denial of the claimant's application for permission to appeal the judgment of the Court of Appeals. We deduce that the purported liability of the Attorney General is founded upon his official function as Reporter of the decisions of the Supreme Court.[1]

The State filed a Rule 12.02(b) motion to dismiss for failure to state a claim upon which relief can be granted. The accompanying Memorandum argued that (1) the claim is barred by the Statue of Limitations, (2) the claim is barred by absolute immunity, and (3) the opinion of the Court of Appeals was not libelous. The Claims Commission granted the motion to dismiss, and this appeal resulted. Our review is *de novo* on the record with no presumption of correctness. Rule 13, T.R.A.P.; *Tenn. Farmers Ins. Co. v. Amer. Nat. Ins. Co.*, 840 S.W.2d 933, (Tenn. Ct. App. 1992); *Elliott v. Dollar Gen. Corp.*, 475 S.W. 651 (1971). The propounded issues involved questions of privilege, immunity, libel and the statue of limitations.

The Opinion complained of is reported, as aforesaid, in 955 S.W.2d 60. In light of this publication, no reason comes to mind to justify a plenary recitation of the claimant's abbreviated tenure as a probationary staff attorney for the Tennessee Department of Mental Health and Mental Retardation, and the reasons for her termination. Suffice to state that she was employed on July 25, 1994 as "Attorney III" and assigned to the Arlington Development Center in Shelby County, which

---

[1]Claimant also filed a 42 U.S.C.§ 1983 case in the U.S. District Court at Nashville against Judges Koch, Todd and Cantrell. She also sought review by that Court of her state claim. The case was referred to the Magistrate Judge, who filed a Report finding, *inter alia*,
> "The claims asserted by the plaintiff border on the frivolous. It is difficult to believe that an attorney ..... could file such pleadings."

The Report and Recommendation of Dismissal by the Magistrate Judge was adopted and approved by U.S. District Judge Thomas A. Higgins on April 7, 1999. The case is on appeal to the Sixth Circuit. Plaintiff argues that the distinction between the State and Federal cases is found that, in the former, damages are sought against the State of Tennessee, whose liability is alleged to be derivative, for the alleged libelous statements in the opinion authored by Judge Koch, while in the latter, damages are sought against the individual judges for allegedly depriving the claimant-plaintiff of due process.

was then the subject of litigation brought by the U.S. Department of Justice involving the Department's alleged failure to provide a safe environment for the residents. The claimant was critical of the Department's handling of the federal litigation, and did not report for work for several days. On August 22, 1994 she was informed of her termination because she was not "fitting in". Her termination was effective as of August 25, 1994. On September 2, 1994 pursuant to T.C.A. § 4-5-223, she petitioned the Department and the Civil Service Commission for a declaratory order respecting her rights as a probationary employee under T.C.A.§ 8-30-312. A declaratory ruling was denied, and the claimant thereupon filed a complaint in the Davidson County Chancery Court seeking a declaratory judgment of her rights as a probationary employee. The complaint was dismissed for failure to state a claim for which relief could be granted. The claimant appealed to the Court of Appeals which affirmed the judgment in an opinion giving alleged rise to this action.

The claim is focused on the following portion of the opinion authored by Judge Koch:

> "Ms. Cashion promptly shared Mr. Boyd's remarks with her immediate supervisor. During this meeting, Ms. Cashion was extremely critical of the DMHMR's handling of the federal investigation and of its standards and procedures at Arlington. She returned to Memphis following the meeting but did not report for work at Arlington for several days. She decided to work at home because the Department had not provided her with 'proper office space' . . . and because she believed that her work was on hold. . . Ms. Cashion met with Stanley Lipford . . .and Larry Durvin . . .when she returned to Arlington on August 22, 1994. When Ms. Cashion vehemently protested her dismissal, Dr. Durbin and Mr. Lipford instructed her to clear out her desk, return her keys, and leave . . . Arlington . . . by the end of the day."

The claimant exegetes the quoted remarks as "a false, inaccurate, misleading depiction of the appellant as staff counsel," and ". . . by describing claimant to be

3

a person who is unreliable, unreasonable, unstable, near-hysterical, temperamental, almost violent, over-bearing, overly demanding," she was "portrayed as a person no reasonable employer in his right mind would not consider firing her."

## III

With respect to the allegation of libel, our perplexity is boundless, because however subjectively extrapolated, the remarks are clearly not libelous. A citation of authority for this conclusion is not required. We agree with the finding of the Commission that "This Commission cannot find anything at all in this opinion that describes the 'claimant to be a person who is unreliable, unreasonable, unstable, near-hysterical, temperamental, almost violent, over-bearing, overly-demanding'-- this opinion just does not say any such thing and does not leave any such impression. This opinion simply does not have the 'the tendency to injure Claimant's professional reputation and to hold Claimant up to scorn and ridicule . . .' (as the addendum to the complaint says). Can this claimant be complaining about some other opinion, different from the one published at 955 S.W.2d 60?"

## IV

Parenthetically, at this juncture of the case, we note that the Claims Commissioner considered the State's reply to the claimant's opposition to the motion to dismiss without affording the claimant an opportunity to submit a response. Claimant treats this action as seriously impeding her presentation. Any response would have been necessarily argumentative, and hence its absence was not - could not - be crucial. This issue is *de minimis* and need not be further noticed.

## V

4

We pretermit the issue of the Statute of Limitations, which inferentially recognizes the viability of a claim had it been timely presented. Our view of this litigation is no less critical than the views of the Federal Court or the Tennessee Claims Commission. The purported claim is utterly devoid of merit.

## VI

We now take up the issue of immunity. A claim for libel is within the jurisdiction of the Claims Commission if the state employee is determined to be acting within the scope of employment. T.C.A. § 9-8-307(a)(1)(R). But the defamatory matter constituting libel must first be proved, else the issue is moot; and we have heretofore summarily held that nothing in the subject opinion is remotely libelous. Syllogistically, then, the issue of immunity is moot and unnecessary to be discussed. But the point should in all events be pressed: Judges are absolutely immune from monetary liability for decisions within the scope of their official functions, and the State is entitled to plead this defense pursuant to T.C.A. § 9-8-307(d) in its capacity as employer.

The United States Supreme Court has held that the particularly sensitive duties of certain public officials require that they have absolute immunity from money damages for decisions within the scope of their official functions. *See, e.g., Nixon v. Fitzgerald,* 457 U.S. 731, 746, 102 S.Ct. 2690, 2699, 73 L.Ed.2d 349 (1982) (President); *Butz v. Economou*, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911-12, 57 L.Ed.2d 895 (1978) (officials with functions similar to those of judges); *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct 1099, 1107, 55 L.Ed.2d 331, 342, *reh'g denied* 436 U.S. 951, 98 S.Ct. 2862, 56 L.Ed.2d 795 (1978), *on remand Sparkman v. McFarlin*, 601 F.2d 261 (7th Cir. 1979) (judges); *Imbler v. Pactman*, 424 U.S.

409-23, 96 S.Ct. 984, 990-92, 47 L.Ed.2d 128, 137-40 (1976) (prosecutors). For these officials, the threat of liability would inhibit the performance of their duties:

> When officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be induced to act with an excess of caution or otherwise skew their decision in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct.

Chief among such public officials are judges. It has long been recognized by the United States Supreme Court that judicial acts enjoy common law immunity. *See Wilkes v. Dinsman*, 48 U.S. 89, 12 L.Ed. 618 (1849); *Randall v. Brigham*, 74 U.S. 523, 19 L.Ed. 285 (1868). In 1872, the Supreme Court declared that it was a general principle of the highest importance that a judicial officer should be free to act upon his own convictions, without apprehension of personal consequences to himself. *Bradley v. Fisher*, 13 Wall 335, 347, 80 U.S. 335, 20 L.Ed. 646 (1871). For this reason, the Court in *Bradley* held that judges of general jurisdiction are not liable in civil actions for their judicial acts. Tennessee law is in accord with this approach. *See Heath v. Cornelius*, 511 S.W.2d 683 (Tenn. 1974).

Judges sued under 42 U.S.C. § 1983 have absolute immunity for acts within the judicial role. *Pierson v. Ray* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). If the Court has jurisdiction and the judge is discharging his legal duties, the doctrine of judicial immunity applies. *See Kurz v. State of Michigan*, 548 F.2d 172, 174 (6th Cir. 1977), *cert. denied*, 434 U.S. 972, 98 S.Ct. 526, 54 L.Ed.2d 462, *reh'g denied* 434 U.S. 1089, 98 S.Ct. 1289, 55 L.Ed.2d 796 (1978). *See also Lopez v. Vanderwater*, 620 F.2d 1229, 1233 (7th Cir. 1980), *cert. dismissed*, 449 U.S. 1028 (1980); *Birch v. Mazander*, 678 F.2d 754, 755 (8th Cir. 1982); *Scott v. Hayes*, 719 F.2d 1562 (11th Cir. 1983).

In determining whether a public official such as a judge should be entitled to absolute immunity in a particular case, the Court has adopted a "functional approach." *See, e.g., Nixon v. Fitsgerald,* 457 U.S. at 746-47, 102 S.Ct. at 2699-700, 73 L.Ed.2d at 349; *Butz v. Economou,* 438 U.S. at 508-514, 98 S.Ct. 2911-15, 57 L.Ed.2d 895; *Stump v. Sparkman,* 435 U.S. at 362, 98 S.Ct. at 1107, 55 L.Ed.2d 331; *Imbler v. Pachtman,* 424 U.S. at 420-23, 430, 96 S.Ct. at 990-92, 47 L.Ed.2d at 137-40, 143 (1976).

Applying the functional approach in suits against judges, the cases "suggest an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Forrester v. White,* 484 U.S. at 227, 108 S.Ct. at 544, 98 L.Ed.2d at 565. Judicial acts protected by the doctrine of judicial immunity include, for example, acting to disbar an attorney as a sanction for contempt of court, or barring a witness from the courtroom. *See, e.g., Cameron v. Seitz,* 38 F.3d 264, 271 (6th Cir. 1994); *Bradley v. Fisher,* 13 Wall at 354, 80 U.S. 335, 20 L.Ed. 646. Administrative decisions for which absolute immunity is not extended include the demotion or discharge of court personnel such as a probation officer or a secretary. *See, e.g., Forrester,* 484 U.S. at 229, 108 S.Ct. at 545, 98 L.Ed.2d 555; *Cameron,* 38 F.3d at 272-73. The Court considers such unprotected administrative decision as "acts that simply happen to have been done by judges." *Forrester* at 227, 108 S.Ct. at 544.

In applying the functional approach to a specific case, a court must make a two-part inquiry into the nature of the defendant official's function and the effect of liability upon the execution of that function. The Supreme Court in *Forrester v. White* has described the analysis under the functional approach:

Under that approach, we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluated the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions.

*Forrester* at 224, 108 S.Ct. at 542, 98 L.Ed. 2d 555.

In the case at Bar, the issue is whether the writing and issuing of an opinion in an appeal before the Tennesssee Court of Appeals is a judicial function. The answer to that question is, of course, "yes". In light of this, the Claims Commissioner properly dismissed the claimants claim as barred by judicial immunity.

Moreover, we hold that statements made in the course of judicial proceedings, including those in pleadings, that are relevant and pertinent to the issues involved, are absolutely privileged and cannot be a predicate for liability in an action for libel. *See, Lambdin Funeral Service, Inc. v. Griffith,* 559 S.W.2d 791 (Tenn. 1978). Statements made in the course of a judicial proceeding which are relevant and pertinent are subject to this absolute privilege and cannot be the basis for a libel action even if the statements are false, known to be false, or even malicious. *Myres v. Pickering Firm, Incorporated,* 959 S.W.2d 152 (Tenn. Ct. App. 1997).

The claimant argues that this absolute privilege does not apply to the allegedly defamatory opinion because it included "statements which purport to describe Claimant/Appellant/Plaintiff's comments, appearance, attitude, conduct, behavior and demeanor while she was an employee with the Tennessee Department of Mental Health and Mental Retardation, offering no references to the Record, no attribution to sources, no characterization as to whether the statements were

8

contested or uncontested, supported or unsupported." She contends that such a discussion was unnecessary to a resolution of the case.

Her appeal centered on her dismissal because she was not "fitting in." She argues the following statements were libelous and not relevant and pertinent to the opinion. "Ms. Cashion promptly shared Mr. Boyd's remarks with her immediate supervisor."; "During the meeting, Ms. Cashion was extremely critical of the DMHMR's handling of the federal investigation and of its standards and procedures at Arlington."; "She returned to Memphis following the meeting but did not report for work at Arlington for several days."; "She decided to work at home because the Department had not provided her with 'proper office space' . . . and because she believed that her work was on hold . . ."; "Ms. Cashion met with Stanley Lipford and Larry Durbin . . . when she returned to Arlington on August 22, 1994."; :When Ms. Cashion vehemently protested her dismissal, Dr. Durbin and Mr. Lipford instructed her to clear out her desk, return her keys, and leave . . . Arlington . . . by the end of the day." It is elementary that a judicial opinion should recite the evidence of record or discussed in the briefs which supports an action taken. "Fitting in" required some explanation.

We need not burden this matter further. The judgment is affirmed at the costs of the appellant.

The sitting Judges of the Court of Appeals of Tennessee recused themselves from a consideration of this case. The Chief Justice of the Supreme Court of Tennessee, within his statutory purview, designated the undersigned Senior Judges of Tennessee to hear this case.

_____   William H. Inman, Senior Judge

CONCUR:

_____
John K. Byers, Senior Judge

_____
L. Terry Lafferty, Senior Judge